The Full Commission has reviewed the prior Opinion and Award based upon the record of the hearing and the briefs and oral arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Upon reconsideration of the evidence of record, the Full Commission reverses in part and affirms in part the prior Opinion and Award and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 15 January 1997 as:
 STIPULATIONS
1. All parties necessary to the determination of this matter are properly before the Court; the Industrial Commission has jurisdiction over this matter; the parties are subject to the North Carolina Workers' Compensation Act; an employer-employee relationship existed between the named employer and the named employee; and the Carrier liable on the risk is correctly named.
2. Plaintiff's average weekly wage at all relevant times herein was $479.94, yielding a compensation rate of $331.98. Plaintiff received temporary total disability benefits from 9 February 1994 through 9 August 1994, totaling $7,937.40, and from 12 June 1995 through 18 February 1996, totaling $11,817.68. In addition, plaintiff received advances against an eventual permanent disability rating in the amount of $3,000.00 from defendants.
3. The issues before the Commission are: (1) what is plaintiff's permanent partial disability rating under G.S. §97-31; (2) is plaintiff entitled to temporary total disability benefits for any period of time; (3) is plaintiff precluded from receiving any additional benefits because of non-cooperation with vocational rehabilitation; (4) is plaintiff precluded from receiving benefits because of fraud and misrepresentation committed by plaintiff; and (5) are defendants entitled to a credit for temporary total disability payments made to plaintiff while plaintiff was employed and earning wages, and if so, in what amount?
***********
Based on the evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. The hearing in this matter was held before Deputy Commissioner Martha W. Lowrance on 15 January 1997. Subsequent to the hearing, this case was reassigned to Deputy Commissioner W. Bain Jones, Jr. for the rendering of a decision. Deputy Commissioner Jones was not present for the live testimony. Therefore, the Full Commission is in as good as position as Deputy Commissioner Jones to review the cold record and make determinations as to the credibility of the witnesses and the weight to be given to the evidence presented by the parties.
2. Plaintiff began his employment with defendant-employer in July 1992 as a mechanic. His primary duties involved fabrication and installation of vacuum systems and duct work. Plaintiff earned $9.00 per hour. Based on the plaintiff's stipulated average weekly wage of $479.04 and using an overtime rate of $13.50 per hour, plaintiff worked an average of 48.8 hours per week for defendant-employer.
3. On 8 February 1994, plaintiff fell from a ladder to a concrete floor while working on a boiler system. Plaintiff injured his left shoulder and wrist.
4. The incident on 8 February 1994 was an interruption of plaintiff's normal work routine and constituted an injury by accident arising out of and in the course of his employment with defendant-employer.
5. Plaintiff was examined by Dr. John T. McCormick and was diagnosed with a colles fracture and a left rotator cuff injury. Dr. McCormick performed surgery on plaintiff's wrist, which involved an open reduction and internal fixation of the distal radius and ulnar, along with an application of an external fixater. Plaintiff was eventually released by Dr. McCormick to return to work without restrictions.
6. As the result of plaintiff's 8 February 1994 injury by accident, he was unable to earn wages in his position with defendant employer or in any other employment from the date of the accident until 9 August 1994. He was paid a total of $7,937.40 in temporary total disability benefits for this period. Plaintiff stopped working for defendant-employer on 12 June 1995. Thereafter, plaintiff received temporary total disability benefits in the amount of $11,817.68 through 8 February 1996.
7. On or about 12 August 1995, at plaintiff's request, defendants provided a prepayment of $3,000.00 against plaintiff's eventual permanent partial disability rating.
8. In May of 1995, defendants engaged David Stewart, a Vocational Rehabilitation expert employed by CorVel, to assist plaintiff in finding suitable employment. Mr. Stewart first endeavored to determine whether defendant-employer could accommodate the plaintiff. On or about 15 June 1995, defendant-employer advised plaintiff that there was no work available for him within his restrictions. When defendant-employer indicated they could not accommodate plaintiff and did not have work available within his restrictions, Mr. Stewart met with plaintiff on 23 June 1995 to set up a job search program.
9. On 21 June 1995, plaintiff on his own applied for a position as a sheet metal worker with Lanford Welding and Mechanical, Inc., a company located in Clinton, South Carolina. Plaintiff was hired by Lanford on 24 July 1995 at a wage of $9.00 per hour, the same wage he earned with defendant-employer. On 29 November 1996, his hourly wage was increased to $9.50 per hour. Plaintiff's position was full-time. The number of hours worked by plaintiff depended on the availability of work. Payroll records produced by Lanford for 24 July 1995 through 6 March 1997 indicate that plaintiff, using an overtime rate of $13.50 per hour, averaged working approximately 44 hours per week for Lanford, and earned an average of approximately $415.00 per week during this time period. Payroll records also indicate that the plaintiff routinely worked substantial overtime during this time period. Plaintiff testified that he was capable and willing to work as many hours as were available and as were provided to him by Lanford. The availability of work was the only factor that determined the amount earned by plaintiff on a weekly basis. Plaintiff's injuries did not cause a decrease in plaintiff's wage earning capacity.
10. In September 1995, through Mr. Stewart, defendants engaged the services of a private investigator for follow plaintiff and determine whether he was working. It was discovered later that plaintiff was working full time for Lanford in South Carolina.
11. Plaintiff did not work for Lanford during October of 1995. Plaintiff testified that he was traveling during October to Indiana and Colorado looking for employment. However, Sammy Lanford, the owner of Lanford Welding testified that when he was interviewing plaintiff for employment in July, plaintiff advised at that time that he would need to take the month of October off because he led a hunting expedition to Colorado every October. Lanford testified that it was his understanding that the plaintiff did in fact lead a hunting expedition to Colorado in October of 1995. Further, the plaintiff testified that he would require approximately $3,000.00 before being able to lead such an expedition. This is the amount the plaintiff requested and received as an advance from the defendants in August. When the plaintiff was confronted at his deposition with a business card titled "Big Jim's Guide Service" with his name on the card, plaintiff testified that the card was printed by his ex-wife in approximately 1984 when he was thinking about opening a hunting guide business. However, the business card was obtained from Sammy Lanford during his deposition. The address and phone number on the business card are the same as the plaintiff's address and phone number when he lived in North Carolina from approximately 1991 through 1995. Plaintiff did not live in North Carolina in or around 1984. Plaintiff testified that he did not move to North Carolina until 1986 when he moved to Lenoir. Plaintiff did not move to Hudson, North Carolina, the town printed on the card, until the latter part of 1991. Plaintiff's testimony on the issue of whether or not he led a hunting expedition to Colorado in October is not accepted as credible.
12. When plaintiff discovered that that defendants had hired a private investigator in December 1995 or January 1996, he informed Lanford of the situation. As a result, plaintiff was terminated from his employment with Lanford. Plaintiff's termination from his job with Lanford and any inability he had to earn wages thereafter was unrelated to his 8 February 1994 injury by accident.
13. Plaintiff failed to inform defendants or David Stewart that he was working for Lanford. When this was discovered by defendants, an Industrial Commission Form 24 application was filed and subsequently approved on 18 February 1996. Until defendants stopped paying temporary total disability benefits pursuant to their Form 24 application, plaintiff received temporary total disability benefits and full wages from Lanford. Specifically, plaintiff was paid $9,825.80 in temporary total disability benefits between 24 July 1995, the date he began work for Lanford, and 18 February 1996, the date the Form 24 application was approved.
14. On 12 July 1994, the plaintiff presented to Dr. David M. Dupuy for an independent medical examination. Dr. Dupuy projected a rating of 25% permanent partial disability to the left arm, based on a finding of 5% to the shoulder and 20% to the hand. Dr. John McCormick, plaintiff's treating doctor, on 14 October 1994, calculated a greater than 100% disability to plaintiffs left arm. After Pat Benton, Chief Claims Examiner with North Carolina Industrial Commission, provided guidance on rating a case such as involved with plaintiff, both doctors provided new disability ratings. On 25 March 1995, Dr. Dupuy assigned 17% permanent partial disability rating to the left arm which incorporated the injuries to the wrist and shoulder. On 31 March 1995, Dr. McCormick assigned a 25% rating to plaintiff's arm based on a 28% impairment of the hand, and also assigned an independent 29% disability rating to the arm based on loss of motion in the wrist, forearm and shoulder. Dr. McCormick then added the 25% arm rating and 29% arm rating, arriving at a 54% permanent partial disability to plaintiff's left arm.
15. In rejecting Dr. Dupuy's disability rating, the Deputy Commissioner indicated that Dr. Dupuy failed to include disability to plaintiff's left hand in reaching his final rating. However, Dr. Dupuy in his 12 July 1994 note, specifically indicates that he was considering a limited range of motion of the wrist and fingers in calculating the projected disability rating. Dr. Dupuy in his 24 March 1995 note again specifically notes that he considered the limited range of motion in calculating the 17% disability rating. Finally, Dr. Dupuy in his deposition testified that in reaching the 17% impairment rating, he combined the entire impairment of the wrist, hand, and shoulder.
16. The 54% permanent partial disability rating assigned by Dr. McCormick is not correctly calculated and is therefore rejected. Pursuant to the Rating Guide, plaintiff is entitled to one disability rating to his left upper extremity since plaintiff suffered damage in an area proximal to the elbow joint. The single disability rating is to incorporate any disability to the hand or digits. Dr. McCormick instead calculated two disability ratings to the arm, and then simply added the two ratings together to arrive at 54%. Therefore, plaintiff, in essence, received two disability ratings to the arm, which is improper under the law and the Rating Guide. Such a method of calculating plaintiff's disability rating is improper. Further, Dr. McCormick included the wrist in assigning a 29% impairment to the arm. The wrist properly should be rated as part of the hand.
17. Dr. Dupuy, who is Board Certified in the American Academy of Disability Evaluating Physicians, correctly calculated plaintiff's disability rating by assigning one disability rating to the arm which incorporated any disability to the fingers, hand, wrist, and shoulder. It is found that the plaintiff retains a 17% permanent partial impairment rating to his left arm.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on 8 February 1994. G.S. § 97-2(6).
2. As the result of his 8 February 1994 injury by accident, plaintiff is entitled to receive payment from defendants for all medical treatment, past and the future, necessary to effect a cure or to give relief from his compensable injury. G.S. §97-25.
3. As the result of his 8 February 1994 injury by accident, plaintiff was entitled to receive, and has received, temporary total disability benefits from defendants at a rate of $331.98 per week for the periods of 8 February 1994 through 9 August 1994 and from 12 June 1995 to 24 July 1995. G.S. § 97-29.
4. Because there is no evidence that plaintiff's decrease in average hours worked per week while employed at Lanford was caused by his 8 February 1994 injury by accident, he is not entitled to recover temporary partial disability benefits. G.S. § 97-30.
5. Plaintiff is entitled to be paid by defendants permanent partial disability compensation at the rate of $331.98 for a period of 40.8 weeks for the 17% rating to his left arm. G.S. § 97-31(13).
7. Defendants are entitled to receive a total credit in the amount of $12,985.80, which includes the $3,000.00 prepayment toward plaintiff's rating and the $9,825.80 in temporary total disability benefits paid to plaintiff between 24 July 1995 and 18 February 1996, while plaintiff was employed at Lanford. G.S. § 97-42; G.S. § 97-29.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses in part and affirms in part the Deputy Commissioner's holding and enters the following:
 AWARD
1. Defendants shall pay any and all past or future medical expenses incurred by plaintiff which are related to his 8 February 1994 injury by accident.
2. Defendants shall pay to plaintiff permanent partial disability compensation at the rate of $331.98 per week for 40.8 weeks for the 17% permanent partial disability rating to his left arm, subject to the applicable credits listed in paragraph 3 below.
3. Defendants are entitled to receive a total credit in the amount of $12,985.80, which includes the $3,000.00 prepayment toward plaintiff's rating and the $9,825.80 in temporary total disability benefits paid to plaintiff between 24 July 1995 and 18 February 1996, while plaintiff was employed at Lanford.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to plaintiff above and from the compensation previously paid to plaintiff, subject to the credit provided for defendants.
5. Each side shall pay its own costs.
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER